**UNITED STATES of America, Plaintiff,**

v.

**SHORELINE PACKING CO., Inc., a corporation, et al., Defendants.**

**Civ. A. No. 5008.**

United States District Court
D. Connecticut.

March 18, 1955.

Harry W. Hultgren, Jr., Asst. U. S. Atty., Hartford, Conn., for plaintiff.

William M. Pomerantz, Jerome E. Caplan, Hartford, Conn., for defendants.

SMITH, Chief Judge.

### Findings of Fact

1. This is a civil action brought by the United States as plaintiff under and by virtue of the provisions of Section 2(e) of the Emergency Price Control Act of 1942, as amended, 56 Stat. 23; 50 U.S.C.A. Appendix, § 902(e), and regulations issued thereunder, and Sections 1345, 2201 and 2202 of Title 28 of the United States Code Annotated.

2. On or about November 5, 1945, the defendants Edward Kaufman and Arthur Kaufman purchased the slaughterhouse and business of one Caspar Block d/b/a The Shoreline Packing Co. located at 22 Burr Street, East Haven, Connecticut.

3. During the period between November 5, 1945 and January 3, 1946, or thereabouts, defendants Edward Kaufman and Arthur Kaufman, under the name of "The Shoreline Packing Co.", engaged in the business of purchasing and slaughtering of livestock, and the sale of carcasses and wholesale cuts produced from such slaughter, as a de facto corporation.

4. Said firm continued to operate, as aforesaid, until January 3, 1946, or thereabouts, at which time it was succeeded by, and its assets transferred to, a corporation known as The Shoreline Packing Co., a Connecticut corporation, which came into legal existence on the latter date; said corporation, like its

predecessor, was located at 22 Burr Street, East Haven, Connecticut, and engaged in the identical business operation.

5. At all times herein pertinent, defendant Edward Kaufman was President and one of the owners of defendant The Shoreline Packing Co., and resided in Hartford, Connecticut.

6. At all times herein pertinent, defendant Arthur Kaufman was Vice-President and one of the owners of defendant The Shoreline Packing Co., and resided in Hartford, Connecticut.

7. During the period from 1943 to 1946, inclusive, there was in existence pursuant to Section 2(e) of the Emergency Price Control Act of 1942, as amended, supra, and regulations issued thereunder (Regulation No. 3, DSC, as amended, 8 F.R. 10826, and Regulation No. 3, Revised, DSC, as amended, 10 F.R. 4241), a governmental program for the payment of subsidy to slaughterers of livestock; that a prerequisite and condition precedent for eligibility for subsidy benefit under said program was full compliance on the part of the slaughterer applicant with regulations of the Office of Price Administration and War Food Administrator, applicable to livestock slaughter or the sale or distribution of meat; that in accordance therewith the subsidy applicant upon submitting claims for subsidy benefit under the program, was required to certify that he was, and had been at all times, during the period of claim in full compliance with the applicable regulations of the OPA and WFA.

8. Defendant The Shoreline Packing Co., beginning with the November 1945 subsidy period and continuing thereafter during each subsidy period through April of 1946, filed claims for subsidy with the Defense Supplies Corporation (or its successor, the Reconstruction Finance Corporation), an agency of the United States, representing, attesting, verifying and certifying in each such claim that they were, and had been at all times, during the periods of claim in full compliance with applicable regulations of the OPA and the War Food Administrator, whereas in fact, defendants were, and had been throughout virtually the entire price program, including the periods in question, in violation of OPA regulations in that they regularly and habitually sold their products at prices exceeding those permissible under MPR 169, as amended.

9. As a result of said certifications and representations, as aforesaid, and upon which the United States relied, defendant The Shoreline Packing Co. was successful in obtaining, during each and every subsidy accounting period from November 1945 to April 1946, inclusive, subsidy benefits and payments from the United States to which it was not entitled, in the amounts on the dates and for the periods set forth in the following schedule:

| Claim No. | Period | | Amount Paid | Date of disbursement | |
|-----------|--------|------|-------------|------|------|
| 11807 | November | 1945 | $   345.32 | March | 6, 1946 |
| 11808 | " | 1945 | 7,384.29 | " | 2, 1946 |
| 12181 | December | 1945 | 217.02 | " | 15, 1946 |
| 12182 | " | 1945 | 7,642.95 | " | 20, 1946 |
| 12677 | January | 1946 | 86.80 | " | 26, 1946 |
| 12678 | " | 1946 | 13,863.77 | " | 27, 1946 |
| 13120 | February | 1946 | 40.86 | April | 25, 1946 |
| 13121 | " | 1946 | 10,862.51 | " | 25, 1946 |
| 13522 | March | 1946 | 241.26 | May | 29, 1946 |
| 13523 | " | 1946 | 11,102.17 | " | 31, 1946 |

$51,786.95

### Conclusions of Law

1. The Court has jurisdiction of the parties and subject matter of the action.

2. Plaintiff is entitled to judgment declaring that defendant The Shoreline Packing Co. was in violation of the Emergency Price Control Act by reason of receiving over the ceiling prices on sales of meat in each of the subsidy accounting periods alleged from Nov. 1945 through March 1946.

### Discussion

Action for declaratory judgment was brought against a corporation, a partnership, Edward Kaufman, Arthur Kaufman and the Administrator, C.T.A., D.B.N. of Jacob Kaufman, for declaration that in certain subsidy accounting periods for which subsidies had been received by them, they had been in violation of the Act by overceiling sales.

The action was dismissed as to the estate of Jacob for lack of proof of partnership, participation in the corporation, or complicity in the alleged overceiling sales or receipt of subsidies.

Lacking proof that a partnership was intended, it is found that the business entity involved was a corporation, de facto from purchase of the business until completion of organization, under Connecticut corporation law, de jure thereafter.

Subsidy payments were made on the dates in the amounts and for the periods set forth in finding #9.

All the payments were received by and for the benefit of the corporation.

Meat retailers Oberstein, Templehof, Keller and Tomasetti all testified to cash payments above the invoice prices for the purchases represented by the invoices in evidence.

Arthur Kaufman testified that the meat was invoiced at the ceiling price plus the freight allowed to be charged.

Defendants contend that the government has the burden of proving that the sales were not of kosher meat or of other products for which some allowance over the straight beef ceiling was permitted.

The invoices themselves, with testimony of the practice of requiring additional cash payments on all invoices, plus Kaufman's testimony that all invoices were at applicable ceiling, plus delivery, appear to be sufficient, absent specific proof of kosher or other legitimate premium as to any sale.

Judgment may be entered for the plaintiff for declaratory relief as against the corporation.